IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

MAR 0 2 2020

CLERK. U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

| | |
|---|---|
| CITY OF SAN ANTONIO <br> RON NIRENBERG, MAYOR FOR <br> THE CITY OF SAN ANTONIO; <br> ERIK WALSH, CITY MANAGER FOR <br> THE CITY OF SAN ANTONIO; AND <br> DR. COLLEEN BRIDGER, ASSISTANT <br> CITY MANAGER FOR THE <br> CITY OF SAN ANTONIO <br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA; <br> JOHN F. BASH, UNITED STATES <br> ATTORNEY FOR THE <br> WESTERN OF DISTRICT OF TEXAS <br> WILLIAM P. BARR, ATTORNEY <br> GENERAL OF THE UNITED STATES <br> UNITED STATES DEPARTMENT OF <br> DEFENSE; <br> DEPARTMENT OF HEALTH <br> AND HUMAN SERVICES; <br> ALEX AZAR, SECRETARY OF <br> DEPARTMENT OF HEALTH <br> AND HUMAN SERVICES; <br> CENTER FOR DISEASE CONTROL <br> AND PREVENTION; <br> ROBERT REDFIELD, DIRECTOR OF <br> CENTER FOR DISEASE CONTROL; <br> MARK ESPER, SECRETARY OF <br> DEFENSE; <br> JEROME ADAMS, UNITED STATES <br> SURGEON GENERAL <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br><br> CIVIL ACTION NO.  SA20CA0255 XR |

### PLAINTIFF CITY OF SAN ANTONIO'S
### EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COME Plaintiffs, CITY OF SAN ANTONIO, RON NIRENBERG, MAYOR FOR THE CITY OF SAN ANTONIO; ERIK WALSH, CITY MANAGER FOR THE CITY OF SAN ANTONIO; DR. COLLEEN BRIDGER, ASSISTANT CITY MANAGER FOR THE CITY OF SAN ANTONIO ("Plaintiffs"), in the above styled and numbered cause and files this its Original Complaint and Application for Temporary Restraining Order and would show unto the Court as follows:

## I. PARTIES

1. PLAINTIFF CITY OF SAN ANTONIO ("Plaintiff") is a home rule municipality in the State of Texas.

2. RON NIRENBERG, MAYOR FOR THE CITY OF SAN ANTONIO, is an individual residing in the City of San Antonio, Bexar County, Texas.

3. ERIK WALSH, CITY MANAGER FOR THE CITY OF SAN ANTONIO, is an individual residing in the City of San Antonio, Bexar County, Texas.

4. DR. COLLEEN BRIDGER, ASSISTANT CITY MANAGER FOR THE CITY OF SAN ANTONIO, is an individual residing in the City of San Antonio, Bexar County, Texas.

5. Defendant UNITED STATES OF AMERICA may be served with process by delivery a copy of the summons and complaint via certified mail to each of the following:

    a.    John F. Bash, Esq. United States Attorney for the Western District of Texas,

    b.    William P. Barr Esq., Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, Attn: Civil Process Clerk;

    c.    Department of Defense, 1400 Defense Pentagon, Washington, DC 20301-1400.

    d.    William P. Barr, Attorney General of the United States Department of Defense;

    e.    Department Of Health And Human Services;

    f.    Alex Azar, Secretary Of Department Of Health And Human Services;

    g.    Center For Disease Control And Prevention;

    h.    Robert Redfield, Director Of Center For Disease Control;

    i.    Mark Esper, Secretary Of Defense; and

    j.    Jerome Adams, United States Surgeon General.

## II. JURISDICTION and VENUE

6. This action is brought pursuant to the 42 U.S.C. § 264 et seq. for equitable relief against the United States government to take steps allowed by law to prevent the spread of communicable disease by exercising its quarantine authority.

7. This action arises out of incidents occurring in San Antonio, Bexar County, Texas. San Antonio is in the Western District of Texas, San Antonio Division.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because the incident occurred in San Antonio, Bexar County, Texas.

## III. FACTUAL BACKGROUND

9. In December 2019 a novel coronavirus, now designated COVID-19, was detected in Wuhan City, Hubei Province, China. Symptoms of COVID-19 include fever, cough, and shortness of breath. Outcomes have ranged from mild to severe illness, and in some cases death.

10. On January 30, 2020, the World Health Organization Director General declared the outbreak of COVID-19 as a Public Health Emergency of International Concern (PHEIC), advising

countries to prepare for the containment, detection, isolation and case management, contact tracing and prevention of onward spread of the disease.

11. . United States nationals were transported from Wuhan City, China to several secure locations within the United States identified by the Centers for Disease Control and Prevention (CDC), including Joint Base San Antonio-Lackland (Lackland) in San Antonio, Texas, in order to ensure the health and wellbeing of those persons.

12. On February 7, 2020, 91 Americans evacuated from Wuhan City, China (Cohort 1) arrived at Lackland, with one person diagnosed with the virus and transported to a local hospital.

13. On February 17, 2020, the Centers for Disease Control evacuated 144 passengers from a cruise ship docked in Japan (Cohort 2) to Lackland.

14. On February 20, 2020, 90 evacuees from Cohort 1 were released from quarantine and returned to their homes.

15. Persons in Cohort 2 that have not exhibited symptoms or have tested negative for the virus were originally set to be released from quarantine at Lackland on March 2, 2020.

16. To date, ten (10) persons evacuated to Lackland have tested positive for the virus and it is anticipated that the number of persons diagnosed with the virus is likely to increase, as testing for the virus continues.

17. All persons quarantined at Lackland and transported to local hospitals are in zero-pressure facilities and being attended to by staff following established CDC protocols for handling these patients in an effort to minimize the potential hazard to the residents of San Antonio and Bexar County and beyond."

18. On Saturday, February 29, 2020, one of the persons in Cohort 1 who had tested positive for COVID-19 and subsequently tested negative on two tests was released from quarantine.

However, this person tested positive for the virus on a third test, with results coming in after her release. This person visited a local mall, ate at its food court, and spent a few hours among other persons, potentially exposing the public to the virus.

19. The person has been returned to quarantine at Lackland while the CDC and local health authorities are taking steps to ensure the community and the global community at large is kept safe and the exposure risk is minimized.

20. It is necessary to the public health of the residents of San Antonio and surrounding areas that those quarantined persons at Lackland remain within the confines of those safe, secure facilities during the quarantine period following their exposure to the virus.

21. Following the release of the person from Cohort 1 and positive test after that release, the imminent movement of those quarantined at Lackland by the CDC to other facilities within the City limits or transport to the San Antonio International Airport for travel to another secure location increases the risks to the residents of the greater San Antonio area, creating a public health threat, requiring the City to mitigate the risk of disease and manage the concerns of residents.

22. The identification of "community spread" cases of COVID-19 in the United States could potentially signal that transmission of the virus may no longer be limited to travel to China, or contact with travelers who have visited China.

## IV. STANDARD OF REVIEW

23. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they

seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *Planned Parenthood Ass'n. of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The party seeking the preliminary injunction bears the burden of persuasion on *all* four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (emphasis added). A plaintiff must establish the same elements for issuance of a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

24. The Fifth Circuit applies a "sliding scale" analysis balancing the likelihood of ultimate success in the end of the case with the "consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief." *Tex. v. Seatrain Int'l., S.A.*, 518 F.2d 175, 180 (5th Cir.1975) (citing *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir.1984)). Granting an injunction is an "exception rather than the rule," especially considering it is an extraordinary remedy. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). In this case, there is no question these extraordinary facts require an extraordinary remedy.

25. The City will file a formal complaint as soon as practicable, but the urgency of this situation requires emergency relief as the City was placed with these factual circumstances based on the unorganized process and procedures for releasing of the evacuees which were already planned, but were evidently not proper with the release of an infected evacuee based on lack of communication. No other relief is appropriate to prevent the grave risk of serious and irreparable harm to the Citizens of San Antonio and across the country as those evacuees travelling can continue to affect others to a deadly disease, as acknowledged by Defendants.

A. **Elements of Injunctive Relief**

   a. **Substantial likelihood that the City will prevail on the merits.**

26.     The course of conduct by the Defendants to continue to release the COVID-19 evacuees will introduce an extraordinary public health risk to the City as already evidenced with the one evacuee who was released, but still was contaminated. The City will likely succeed in at a minimum requiring more specific procedures to avoid the incredible public health risk by releasing the evacuee into the densely populated are of San Antonio. The City alleges its due process will be violated without taking adequate and specific steps to present transmission of COVID-19 and the Defendants will violate the City and the other Plaintiffs substantive and procedural due process rights and civil rights.[1]

   b. **There is a substantial threat to the public and Plaintiffs which is greater than the injury to the Defendants.**

27.     The plan violates the Administrative Procedure Act due to the federal Defendants' failure to consult with and incorporate local government in the planning and implementation process, and risks imposing a serious burden on the City's emergency services.

   c. **There is no question the public interest is served by granting a preliminary injunction.**

28.     There is no greater interest than the public health, safety and welfare to the citizens of San Antonio, and the greater community at large by granting the injunctive relief.

---

[1] Municipalities have standing to sue for due process violations. *See Gomillion v. Lightfoot*, 364 U.S. 339, 344–45 (1960) (observing that "the Court has never acknowledged that the States have power to do as they will with municipal corporations regardless of consequences. Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution").

## REQUEST FOR PRELIMINARY INJUNCTION

29.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the City requests the Court grant this Preliminary Injunction.

30.     Specifically, the City of San Antonio prays the Court maintain the status quo of the Surgeon General's exercise of quarantine authority to protect the health and safety of the residents of San Antonio, Texas.

31.     The City of San Antonio prays the Court require three tests for COVID-19 be required of all individuals currently housed under such Orders.

32.     That the Court require Defendants to specifically outline the required protocols prior to releasing the individuals under such Orders, between the CDC, the State of Texas, and the City of San Antonio, including communication of the results of the three tests no less than 24 hours prior to release among all three entities.

33.     The Plaintiffs recognize that due process is required for these individuals, but until we can confirm they are indeed negative communicators, they need to continue to be quarantined (thinking at least 28 days) before traveling all over the City and then traveling all over the country which will cause irreparable harm to the Plaintiffs, let alone the community at large.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:	(210) 227-3243
Facsimile:	(210) 225-4481
patrick.bernal@rampage-sa.com
clarissa.rodriguez@rampage-sa.com

BY: _____
PATRICK C. BERNAL
State Bar No. 02208750
CLARISSA M. RODRIGUEZ
State Bar No. 24056222

Deborah Lynne Klein
Deputy City Attorney for
The City of Antonio
100. W. Houston Street, Floor 18
Frost Bank Tower
San Antonio, Texas 78205
State Bar No. 11556750
Deborah.Klein@sanantonio.gov


Donna K. McElroy
Dykema
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
State Bar No. 13582050

ATTORNEYS FOR PLAINTIFF
CITY OF SAN ANTONIO

## AFFIDAVIT OF MARIO MARTINEZ

STATE OF TEXAS         §
                                      §
COUNTY OF BEXAR   §

**BEFORE ME,** the undersigned authority, personally appeared Mario Martinez, who, after being duly sworn, deposes and says:

"My name is Mario Martinez. I am over the age of 18, of sound mind, am competent to testify and have personal knowledge of the facts contained herein. I am an Assistant Director of the San Antonio Metropolitan Health District.

In December 2019 a novel coronavirus, now designated COVID-19, was detected in Wuhan City, Hubei Province, China. Symptoms of COVID-19 include fever, cough, and shortness of breath. Outcomes have ranged from mild to severe illness, and in some cases death. On January 30, 2020, the World Health Organization Director General declared the outbreak of COVID-19 as a Public Health Emergency of International Concern (PHEIC), advising countries to prepare for the containment, detection, isolation and case management, contact tracing and prevention of onward spread of the disease. United States nationals were transported from Wuhan City, China to several secure locations within the United States identified by the Centers for Disease Control and Prevention (CDC), including Joint Base San Antonio-Lackland (Lackland) in San Antonio, Texas, in order to ensure the health and wellbeing of those persons.

On February 7, 2020, 91 Americans evacuated from Wuhan City, China (Cohort 1) arrived at Lackland. On February 11, 2020, one person developed symptoms and transported to a local medical center. On February 17, 2020, the Centers for Disease Control evacuated 144 passengers from a cruise ship docked in Japan (Cohort 2) to Lackland. On February 20, 2020, 90 evacuees from Cohort 1 were released from quarantine and returned to their homes. Persons in Cohort 2 that have not exhibited symptoms or have tested negative for the virus were originally set to be released from quarantine at Lackland on March 2, 2020. To date, eleven (11) persons evacuated to Lackland have tested positive for the virus and two persons are pending test results. All persons quarantined at Lackland and transported to a local medical center are in negative-pressure rooms and being attended to by staff following established CDC protocols for handling these patients in an effort to minimize the potential hazard to the residents of San Antonio and Bexar County.

On Saturday, February 29, 2020, one of the persons in Cohort 1 who had tested positive for COVID-19, and subsequently tested negative on two tests, was released from quarantine. However, this person later tested positive for the virus on a third test, with results coming in after her release. This person visited a local mall, ate at its food court, and spent a few hours among other persons, potentially exposing the public to the virus. This person has been returned to quarantine at a medical center while the local health authorities are taking steps to ensure the community is kept safe and the exposure risk is minimized. It is necessary for the public health of the residents of San Antonio and surrounding areas that those quarantined persons at Lackland remain within the confines of those safe, secure facilities during the quarantine period following their exposure to the virus, and until sufficient testing has determined that they do not pose a risk

## AFFIDAVIT OF MARIO MARTINEZ

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

**BEFORE ME**, the undersigned authority, personally appeared Mario Martinez, who, after being duly sworn, deposes and says:

"My name is Mario Martinez. I am over the age of 18, of sound mind, am competent to testify and have personal knowledge of the facts contained herein. I am an Assistant Director of the San Antonio Metropolitan Health District.

In December 2019 a novel coronavirus, now designated COVID-19, was detected in Wuhan City, Hubei Province, China. Symptoms of COVID-19 include fever, cough, and shortness of breath. Outcomes have ranged from mild to severe illness, and in some cases death. On January 30, 2020, the World Health Organization Director General declared the outbreak of COVID-19 as a Public Health Emergency of International Concern (PHEIC), advising countries to prepare for the containment, detection, isolation and case management, contact tracing and prevention of onward spread of the disease. United States nationals were transported from Wuhan City, China to several secure locations within the United States identified by the Centers for Disease Control and Prevention (CDC), including Joint Base San Antonio-Lackland (Lackland) in San Antonio, Texas, in order to ensure the health and wellbeing of those persons.

On February 7, 2020, 91 Americans evacuated from Wuhan City, China (Cohort 1) arrived at Lackland. On February 11, 2020, one person developed symptoms and transported to a local medical center. On February 17, 2020, the Centers for Disease Control evacuated 144 passengers from a cruise ship docked in Japan (Cohort 2) to Lackland. On February 20, 2020, 90 evacuees from Cohort 1 were released from quarantine and returned to their homes. Persons in Cohort 2 that have not exhibited symptoms or have tested negative for the virus were originally set to be released from quarantine at Lackland on March 2, 2020. To date, eleven (11) persons evacuated to Lackland have tested positive for the virus and two persons are pending test results. All persons quarantined at Lackland and transported to a local medical center are in negative-pressure rooms and being attended to by staff following established CDC protocols for handling these patients in an effort to minimize the potential hazard to the residents of San Antonio and Bexar County.

On Saturday, February 29, 2020, one of the persons in Cohort 1 who had tested positive for COVID-19, and subsequently tested negative on two tests, was released from quarantine. However, this person later tested positive for the virus on a third test, with results coming in after her release. This person visited a local mall, ate at its food court, and spent a few hours among other persons, potentially exposing the public to the virus. This person has been returned to quarantine at a medical center while the local health authorities are taking steps to ensure the community is kept safe and the exposure risk is minimized. It is necessary for the public health of the residents of San Antonio and surrounding areas that those quarantined persons at Lackland remain within the confines of those safe, secure facilities during the quarantine period following their exposure to the virus, and until sufficient testing has determined that they do not pose a risk

to the residents of San Antonio, the surrounding area, and fellow travelers throughout the United States.

The identification of "community spread" cases of COVID-19 in the United States could potentially signal that transmission of the virus may no longer be limited to travel to China, or contact with travelers who have visited China. When coupled with recent local events it is imperative that quarantined persons remain at Lackland until it has been determined that they pose no threat of contributing to the spread of COVID-19.

Affiant says nothing further."

_____
Mario Martinez

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, by the said Mario Martinez, to certify which, witness my hand and seal of office, this 2nd day of March, A.D., 2020.



Notary Public, State of Texas

MARLENA GUAJARDO
My Notary ID # 10002560
Expires November 15, 2022